**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **TERENCE L. POLLARD** | **CIVIL ACTION** |
| **VERSUS** | **NO.    16-0192** |
| **N. BURL CAIN, WARDEN** | **SECTION: "G"(5)** |

### REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.    *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

### I. PROCEDURAL HISTORY

Petitioner, Terence Pollard, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.    On November 14, 2008, he was charged with armed robbery with a firearm and attempted first-degree murder.[1]    His first two trials resulted in

---

[1] State Rec., Vol. 1 of 8, Bill of Information.    The driver of the vehicle with whom Pollard left the scene of the robbery was also charged in that bill of information.    Lacie LeBeauf ultimately pleaded guilty to aggravated flight from an officer and accessory after the fact to armed robbery.

mistrials.[2]    The State subsequently amended the bill of information to dismiss the attempted murder charge and added a charge of felon in possession of a firearm.    At his rearraignment, he pleaded not guilty.    On August 16, 2011, a third trial began and resulted in a jury verdict of guilty as charged on both counts.[3]    His motion for a new trial was denied. On November 2, 2011, he was sentenced respectively to 50 and 10 years imprisonment, without benefit of probation, parole or suspension of sentence.[4]    On April 30, 2012, following a multiple-offender adjudication, the original sentence of 50 years imprisonment was vacated and he was resentenced as a second-felony offender to 70 years imprisonment.[5]

On direct appeal, Pollard asserted that the trial court erred in finding him competent to stand trial and that there was insufficient evidence to adjudicate him as a second-felony offender.    On December 18, 2012, the Louisiana Fifth Circuit Court of Appeal affirmed the convictions and sentences.[6]    On June 21, 2013, the Louisiana Supreme Court denied his

---

[2] *See* State Rec., Vol. 1 of 8, Minute Entry, 9/15/09; Minute Entry 2/23/11.    Based upon Pollard's egregious behavior during these trial proceedings, his competency to proceed was evaluated at length and was the subject of multiple hearings.    Ultimately it was determined that he was competent to proceed.    *Id.*, Competency Hearing Transcripts (September 16, 2009, December 8, 2010, and April 6, 2011).

[3] State Rec., Vol. 1 of 8, Minute Entry, 8/18/11.

[4] State Rec., Vol. 1 of 8, Minute Entry, 11/2/11.

[5] State Rec., Vol. 2 of 8, Minute Entry, 4/30/12.

[6] *State v. Pollard*, 2012-KA-346 (La. App. 5th Cir. 12/18/12), 106 So.3d 1194, State Rec., Vol. 4 of 8.

application for a writ of certiorari.[7]

On August 13, 2014, Pollard filed an application for post-conviction relief with the state district court.[8]    In that application, he asserted:    (1) he was denied the right to judicial review based upon an incomplete record that did not include transcribed voir dire proceedings or opening and closing statements; (2) the evidence was insufficient to convict him of armed robbery because the State failed to prove that he was armed with a dangerous weapon; (3) he was denied effective assistance of trial counsel based upon counsel's joint stipulation as to the weapon's current inoperable state, failing to object to the jury instruction regarding the State's burden of proof, and failing to conduct an adequate investigation or present a competent defense; and (4) he was denied effective assistance of counsel on appeal for raising frivolous arguments rather than a sufficiency-of-the-evidence claim.    On October 20, 2014, the state district court denied relief with written reasons.[9] Pollard's related supervisory writ application was denied by the Louisiana Fifth Circuit Court of Appeal on January 26, 2015.[10]    His writ to the Louisiana Supreme Court was denied on December 7, 2015.[11]

---

[7]  *State v. Pollard*, 2013-KO-0140 (La. 6/21/13), 118 So.3d 408, State Rec., Vol. 4 of 8.

[8]  State Rec., Vol. 5 of 8, Uniform Application for Post-Conviction Relief.

[9]  State Rec., Vol. 5 of 8, Order denying PCR, 10/20/14.

[10]  State Rec., Vol. 5 of 8, *State v. Pollard*, 2014-KH-901 (La. App. 5th Cir. Jan. 26, 2015).

[11]  State Rec., Vol. 8 of 8, *State ex rel. Pollard v. State*, 2015-KH-0386 (La. 12/7/15),

On or about January 6, 2016, Pollard filed his federal application for *habeas corpus* relief.[12]     In that application, Pollard raises the following grounds for relief: (1) he was denied the right to judicial review based upon an incomplete record that did not include transcribed voir dire proceedings or opening and closing statements; (2) the evidence was insufficient to convict him of armed robbery because the State failed to prove that he was armed with a dangerous weapon; (3) he was denied effective assistance of trial counsel based upon counsel's joint stipulation as to the weapon's current inoperable state, failure to object to the jury instruction regarding the State's burden of proof, and failure to conduct an adequate investigation in order to present a competent defense; and (4) he was denied effective assistance of counsel on appeal because counsel raised frivolous arguments rather than a sufficiency-of-the-evidence claim.

The State concedes that Pollard has exhausted his remedies in the state courts and that the federal application is timely.     The State argues that the claims should be dismissed on the merits.

## II. FACTS

The following facts were established at trial and summarized by the Louisiana Fifth

---

180 So.3d 1282.

[12] Rec. Doc. 1, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus.    The petition was tendered for filing in this Court on January 6, 2016.    Although Pollard failed to date the petition except for the year 2016, the precise timing (January 1-6) is not relevant because the State concedes that the instant petition was filed timely.    *See* Rec. Doc. 12, pp. 6-7 n. 8.

Circuit Court of Appeal:

At approximately 7:30–7:45 a.m. on October 10, 2008, Lisa Hotard walked outside of her apartment complex located at 4800 Zenith Street in Metairie and put her trash in the dumpster in the parking lot. As she walked towards her car, a young man she later identified as defendant approached her and asked for her purse. Ms. Hotard thought he was joking, and she told him she did not have anything in her purse. He asked her again, and she repeated that she had nothing in her purse. Defendant then pulled out a gun, shoved her to the ground, pulled the trigger, and stuck the gun in her side. Ms. Hotard started yelling at him to get off of her at which time he ran away with her purse.

At approximately the same time, a resident at the apartment complex, Arthur Blackwell, and his girlfriend heard a woman screaming. Mr. Blackwell looked out of his window and saw a man and a woman screaming. He told his girlfriend to call the police, and then he ran out of the door to where he saw a woman lying on the ground and a man with a gun. Mr. Blackwell told the man, whom he later identified as defendant, to leave the woman alone at which time defendant jumped into a small grey car being driven by a woman and left. Mr. Blackwell's girlfriend also saw defendant and the victim fighting over a purse and saw defendant put a gun to the victim's side. She further saw defendant leave in a small silver SUV being driven by a female.

Another apartment complex resident, Darnerio Rogers, heard the "commotion." He spoke to the victim and found out what happened. After getting a physical description of the perpetrator and the vehicle in which he left from the victim, Mr. Rogers got into his vehicle and tried to locate the suspect. He found a vehicle matching the description at a nearby gas station at Transcontinental and Veterans Blvd. Mr. Rogers pulled up beside the vehicle, got out, and pretended like he was getting ready to pump gas. He then noticed a black male, who matched the physical description, standing by the gas pump and a black female in the driver's seat. Mr. Rogers called the Jefferson's Parish Sheriff's Office (JPSO) and gave them the license plate number of the vehicle. Meanwhile, the suspects drove off. Mr. Rogers followed them and relayed the direction of the vehicle to the JPSO.

JPSO Officer Stephen Hymel heard a dispatch of the description of the suspects and the vehicle. He saw the vehicle on Transcontinental and activated his lights and sirens to stop the vehicle. The car stopped, but when Officer Hymel

ordered defendant to show his hands the vehicle took off. Officer Hymel eventually caught up with the vehicle, but both defendant and the female driver exited the vehicle and fled on foot. Officer Hymel pursued the female, apprehended her, and placed her in his unit.[13]  Defendant was subsequently apprehended by another officer after a short chase. The victim was brought to defendant's location immediately thereafter and made a positive identification of him as the person who robbed her.

The victim's purse was located on the same day of the incident on the lawn of a house on Haring Road. Co-defendant Lacie LeBeauf, who was the driver of the get-away car, testified that defendant threw the victim's belongings out of the window while she was driving. Additionally, a gun was found about one block away from the purse. The victim identified this gun as looking identical to the one defendant used during the robbery.

After defendant's arrest, he was advised of his rights and indicated he understood and wished to waive them. He then admitted that he committed the robbery, but claimed he did not have a gun during it and explained, "no gun, no crime." Defendant refused to give a *taped* statement but acknowledged that he had discussed the robbery with an officer.[14]

### III. STANDARDS OF REVIEW ON THE MERITS

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both.    A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts

---

[13]  The female driver, Lacie LeBeauf, was named as a co-defendant in the bill of information.  She ultimately pleaded guilty to aggravated flight from an officer and accessory after the fact to armed robbery.

[14]  State Rec., Vol. 4 of 8, *State v. Pollard*, 2012-KA-346 (La. App. 5th Cir. 12/18/12), 106 So.3d 1194, 1197-98 (footnote in original).

in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010). An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the

particular state prisoner's case."    *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694.    A state court's merely incorrect application of Supreme Court precedent simply does not warrant *habeas* relief.    *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir.2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").    "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA.    *Harrington v. Richter*, 562 U.S. 86, 102 (2011).    Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents."    *Harrington*, 562 U.S. at 102 (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal *habeas corpus* review as a vehicle to second-guess the reasonable decisions of state courts.").

## IV. CLAIMS FOR RELIEF

### A. Denial of right to judicial review based upon incomplete record

Pollard claims that an incomplete record on direct appeal denied him the right to appellate review.    Specifically, he points to the missing transcripts of voir dire, opening statement and closing argument.    These portions of the proceedings were not transcribed

or made a part of the record on appeal.

The state district court rejected this claim on collateral review, finding that Pollard received constitutionally sufficient review on appeal and suffered no prejudice from the missing transcripts because they were immaterial to the issues presented on appeal.    The Louisiana Fifth Circuit found no error in that ruling.    The Louisiana Supreme Court denied relief, stating Pollard was not denied judicial review based on omissions in the record on appeal.

The record shows that Pollard's appointed counsel on direct appeal ensured the record was complete for appeal.    After the appeal record was lodged, appointed counsel filed a motion to supplement the record with "the transcript and minute entry for the multiple bill hearing and the opening statements and closing arguments or a statement of no objections." [15]    The record was supplemented accordingly with the multiple-bill information and a verified statement by the court reporter that no objections were made during either opening statements or closing arguments. [16]    Pollard was given an opportunity at his request to file a *pro se* supplemental brief and provided a copy of the appellate record for review, but failed to prepare a supplemental brief.    He maintains that because he was never afforded the transcripts of voir dire, opening statements or closing

---

[15]  State Rec., Vol. 2 of 8, Motion to Supplement and For Suspension of Time.

[16]  *Id.*, Letter from Clerk of Court dated May 18, 2012; *see also* State Rec., Vol. 3 of 8, Supplement-Record on Direct Appeal.

arguments, the record was incomplete and inadequate for appellate review.[17]

Pollard cites to the state Constitution and the Louisiana Code of Criminal Procedure in an attempt to establish what constitutes a "complete" record and to support his argument that the necessary portions of the record were not included.[18]    To the extent he argues that the failure to transcribe and include these portions of the record violated state law, that claim is not cognizable.    Federal *habeas corpus* relief may be granted only to remedy violations of the federal Constitution and laws of the United States; mere violations of state law will not suffice.    28 U.S.C. § 2254; *Engle v. Isaac*, 456 U.S. 107, 119 (1983).

To the extent he asserts a federal violation, the claim is without merit.    The mere fact that the transcript was incomplete is insufficient to warrant federal *habeas corpus* relief. As the United States Fifth Circuit Court of Appeals has explained:

> [T]he state is not obligated to automatically supply a complete verbatim transcript, and a State need not waste its funds providing for free those parts of the transcript that are not germane to consideration of the appeal. Nor is the state required to furnish complete transcripts so that the defendants may conduct fishing expeditions to seek out possible errors at trial.

*Kunkle v. Dretke*, 352 F.3d 980, 985-86 (5th Cir. 2003) (citations, quotation marks, brackets, and ellipsis omitted).    Here, Pollard's allegations concern just such a fishing expedition.

---

[17]    Subsequent to his direct appeal, Pollard complained that the appellate record was incomplete and filed motions with the state district court requesting, *inter alia*, transcripts of voir dire, opening statements and closing arguments.    State Rec., Vol. 4 of 8, Correspondence dated May 19, 2014 and June 2, 2014 with responses from the Clerk's Office dated May 20, 2014 and June 3, 2014.

[18]    Rec. Doc. 3, p. 29.

He has failed to reference a single error that allegedly occurred during voir dire, opening statements or closing arguments.    Moreover, as the court reporter's certification highlighted, no objections were made during opening statements or closing arguments that might serve as the basis for a preserved claim on appeal.    *State v. Francis*, 345 So.2d 1120, 1125 (La. 1977) (citing La. Const. Art. 5, § 5(C) (1974) and La. Code Crim. P. art. 841).    Nor does the minute entry for voir dire proceedings disclose any objections raised or grounds for appeal.[19]    Therefore, Pollard failed to show how the missing transcripts prejudiced him on appeal.    Where, as here, the missing portions of the transcript were immaterial to the claims asserted on appeal (*i.e.*, competency and multiple-offender adjudication), the record was adequate for full appellate review and there was no denial of a meaningful appeal.    *See Higginbotham v. Louisiana*, 817 F.3d 217, 222 (5th Cir. 2016) (citing *Schwander v. Blackburn*, 750 F.2d 494, 497–98 (5th Cir. 1985) (quoting *State v. Francis*, 345 So.2d 1120, 1125 (La.1977)).    Accordingly, the denial of relief on this claim was not contrary to, or an unreasonable application of, federal law.    Pollard is not entitled to relief on this claim.

## B. Sufficiency of the Evidence

Pollard claims that the evidence was insufficient to support his conviction for armed robbery because the State failed to prove an essential element of the crime, *i.e.*, that he was armed with a dangerous weapon.    LSA-R.S. 14:64.    His argument is based upon the fact

---

[19]    State Rec., Vol. 1 of 8, Minute Entry, 8/16/11; *see also* Rec. Doc. 12 (State's Response), p. 24 n. 13.

that the gun had no firing pin and therefore was inoperable.

The state district court rejected this claim on post-conviction review as procedurally barred because he failed to assert it on direct appeal.    The Louisiana Fifth Circuit found no error in that ruling.    However, the Louisiana Supreme Court denied relief *on the merits*, finding that the State presented sufficient evidence to support the armed robbery conviction pursuant to *Jackson v. Virginia*, 443 U.S. 307 (1979).    In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim.    *See Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S. Ct. 2590, 2593 (1991).    Here, the last reasoned decision was that of the Louisiana Supreme Court, which despite the lower-court rulings, reviewed the claim on the merits. Accordingly, the Court rejects the State's contention that this Court is precluded from reviewing this claim based upon a procedural bar imposed by the state courts and will proceed to address the merits of the claim.

Because a sufficiency-of-the-evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting the claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."    28 U.S.C. § 2254(d)(1); *Taylor v. Day*, Civ. Action No. 98–3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), *aff'd*, 213 F.3d 639 (5th Cir. 2000).    For the following reasons, the Court finds that Pollard has made no such showing.

Under *Jackson v. Virginia*, 443 U.S. 307 (1979), a federal *habeas* court addressing an insufficiency-of-the-evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.    *Jackson*, 443 U.S. at 319; *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011); *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008).    Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law.    *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U.S. at 324 n. 16).    The court's consideration of the sufficiency of the evidence extends only to what was presented at trial.    *See McDaniel v. Brown*, 558 U.S. 120, 131, 130 S.Ct. 665, 672 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (*Jackson* standard relies "upon the record evidence adduced at the trial") (quoting *Jackson*, 443 U.S. at 324).

Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury.    *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see also Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). Thus, all credibility choices and conflicting inferences must be resolved in favor of the

verdict.    *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

A federal *habeas* court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder.    *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir.1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir.1985). In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.' "    *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U .S. 390, 402 (1993) (emphasis added)).    Moreover, because the state court's decision applying the already deferential *Jackson* standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential."    *Parker v. Matthews*, 132 S.Ct. 2148, 2152 (2012); *see also Coleman v. Johnson*, 132 S.Ct. 2060, 2062 (2012).

Louisiana Revised Statute 14:64(A) provides that "[a]rmed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." A "dangerous weapon" is defined as any instrumentality which, in the manner used, is calculated or likely to produce death or great bodily harm.    LSA-R.S. 14:2(A)(3).    As a general-intent crime, the criminal intent necessary to sustain a conviction is shown by the very doing of the acts that have been declared criminal.    *State v. Payne*, 540 So.2d 520, 523–24 (La. App. 1st Cir.), *writ denied*, 546 So.2d 169 (La. 1989).

Pollard disputes only one element of proof, *i.e.*, that he was armed with a dangerous weapon.    He argues that the jury could not have found him guilty of armed robbery because an inoperable gun cannot be considered a "dangerous weapon" to support that necessary element of the crime under Louisiana law.    Pollard cites no legal support for that proposition.    It is simply his personal belief that "a gun that cannot fire is not a dangerous weapon.    Even the victim thought the gun was a fake."[20]    For this reason, he maintains that the jury should have found him guilty of first-degree robbery.

As the State points out, Louisiana law does not support Pollard's belief.    Indeed, the law is clear that even unworkable weapons can suffice for an armed robbery conviction.    As the Louisiana Second Circuit Court of Appeal has explained:

> A person who commits a robbery by pointing an unloaded and unworkable pistol at the victim can be adjudged guilty of armed robbery.    *State v. Levi*, 259 La. 591, 250 So.2d 751 (1971); *State v. Lewis*, 39,263 (La. App. 2d Cir. 1/26/05), 892 So.2d 702.    Additionally, a toy gun can be considered a dangerous weapon if the jury determines the interaction between the offender and the victim created a highly charged atmosphere whereby there was danger of serious bodily harm resulting from the victim's fear for his life. *State v. Woods*, 97–0800 (La. App. 1st Cir. 6/29/98), 713 So.2d 1231, *writ denied*, 98–3041 (La. 4/1/99), 741 So.2d 1281; *State v. Kemp*, 39,358 (La. App. 2d Cir. 3/11/05), 896 So.2d 349, *writ denied*, 2005–0937 (La. 12/9/05), 916 So.2d 1052. *See also State v. Green*, 409 So.2d 563 (La. 1982); *State v. Lewis*, 39,263 (La. App. 2d Cir. 1/26/05), 892 So.2d 702; *State v. Williams*, 36,456 (La. App. 2d Cir. 10/4/02), 827 So.2d 1286, *writ denied*, 2002–3071 (La. 9/19/03), 853 So.2d 633.

*State v. Chisholm*, 49,043 (La. App. 2 Cir. 5/14/14), 139 So.3d 1091, 1099 (toy pellet gun

---

[20]  Rec. Doc. 3, p. 32.

found sufficient to support armed robbery conviction).    Furthermore, the "dangerous weapon" determination presents a question of fact for the jury:

> In *State v. McClure*, 34,880 (La. App. 2d Cir. 8/22/01), 793 So.2d 454, this court held:

> Whether a weapon is dangerous is a factual question for the jury to determine upon considering not only the character of the weapon, but by whom, upon whom, and in what manner it was used. *State v. Hopkins*, 96-1063 (La. App. 3d Cir. 3/5/97), 692 So.2d 538; *State v. Taylor*, 485 So.2d 117 (La. App. 2d Cir. 1986). The term "dangerous weapon" is not limited to those instrumentalities which are inherently dangerous, but includes any instrumentality "which in the manner used, is calculated or likely to produce death or great bodily harm." La. R.S. 14:2(3); *State v. Bonier*, 367 So.2d 824 (La. 1979).

> Furthermore, the jurisprudence has long held that unworkable or unloaded guns can constitute dangerous weapons when used in a manner likely to produce death or great bodily harm. The likelihood of this serious harm can come from the threat perceived by victims. *State v. Woods*, 494 So.2d 1258 (La. App. 2d Cir. 1986). In *State v. Leggett*, 363 So.2d 434, 440 (La. 1978), *abrogated on different grounds as recognized in State v. Anderson*, 603 So.2d 776 (La. App. 1st Cir. 1992), the dangerous weapon test was met where the weapon used was an air pistol or pellet pistol which could possibly kill or cause great bodily harm. The *Leggett* court also noted that even an unloaded weapon could be used to strike a victim.

*State v. Lewis*, 39,263 (La. App. 2 Cir. 1/26/05), 892 So.2d 702, 707 (brandishing a BB gun whether or not functional found sufficient to support armed robbery conviction); *see also Gipson v. Warden, Louisiana State Penitentiary*, 06-1809, 2009 WL 3333144, at *10 (W.D. La. Oct. 15, 2009) ("whether an object is a dangerous weapon is a factual issue to be determined in the context of how the gun was used in the robbery").

In this case, it is not disputed that the gun was authentic; it simply had no firing pin. In fact, the perpetrator signaled to the victim that the gun was real during the armed robbery.

The victim described how she refused him twice initially when he asked for her purse, but then:  "He knocked me in the garden, and he put the gun to my side.    And at that time, he clicked it.    He clicked it, actually, and that's when I knew it was a real gun.    I mean, he wasn't playing games with me.    And that's when I threw my purse at him."    Although defense counsel questioned on cross-examination whether the victim thought the gun was real, she reiterated that she ultimately knew the gun was not fake.[21]    Two eyewitnesses also testified that they saw the perpetrator threaten the victim with a gun.    One witness agreed that it could have been a 9-millimeter and another thought it resembled a .380 caliber gun.[22] Pollard's girlfriend at the time and driver of the getaway vehicle also testified that Pollard had a gun in his possession when he got into the vehicle with the victim's belongings.[23]

The jury reasonably determined that under the circumstances the gun used during the commission of the crime satisfied the "dangerous weapon" element.    This Court must give great deference to the jury in its determination of evidentiary credibility, and justifiable inferences of fact.    *Cittadino v. Cain*, 98-0774, 1999 WL 350072, at *4 (E.D. La. May 27, 1999) (rejecting *habeas* relief for sufficiency of the evidence claim involving armed robbery conviction where petitioner used a toy gun).    There was ample evidence for the jury in this

---

[21]  State Rec. Vol. 2 of 8, Trial Transcript (Day 2), pp. 23-24 (victim).

[22]  State Rec., Vol. 2 of 8, Trial Transcript (Day 2), p. 49 (Arthur Blackwell); *see also* Trial Transcript (Day 3), p. 86 (Corneshia Causey).

[23]  State Rec., Vol. 2 of 8, Trial Transcript (Day 3), pp. 71-72 (Lacie LeBeauf)

case to conclude that Pollard took the victim's purse by use of force or intimidation while he was armed with a dangerous weapon.

The Louisiana Supreme Court's determination that the evidence was sufficient to support the armed robbery conviction was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Pollard is not entitled to relief on this claim.

## C. Ineffective Assistance of Trial and Appellate Counsel

Pollard raises claims of ineffective assistance of counsel with respect to both his trial and appellate counsel. He contends trial counsel failed to conduct adequate investigation or present an adequate defense, entered a disadvantageous joint stipulation and failed to object to an improper jury instruction. He contends appellate counsel should have raised a claim of insufficiency of the evidence on direct appeal. The state district court rejected these claims raised on post-conviction relief. The appellate courts likewise denied relief.

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel. Specifically, a petitioner seeking relief must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir.1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir.2000). If

a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e*, deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.    *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.    *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir.2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir.1998).    Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689.    "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"    *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690).    A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.    *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir.1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir.1985).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."    *Strickland*, 466 U.S. at 694.    In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*. In making a determination as to whether prejudice occurred, courts must review the

record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793.

Because the state courts rejected Pollard's ineffective assistance of counsel claims on the merits and because such claims present a mixed question of law and fact, this Court must defer to the state-court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."    28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir.2002). In fact, the United States Supreme Court has held that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims must be "doubly deferential" in order to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. at 190).

Pollard argues that trial counsel should have pursued the theory that he was only guilty of first-degree robbery because the gun had no firing pin.    Moreover, he maintains that instead of conducting investigation to prove the gun was inoperable when found by police, counsel agreed to a joint stipulation that "this firearm as its condition is today does not have a firing pin in it and is not capable of firing bullets *at this time*."[24]    Furthermore, he contends counsel failed to object to an impermissible jury instruction that the State had no burden to prove that the gun was loaded or capable of firing.[25]

---

[24]    State Rec., Vol. 2 of 8, Trial Transcript (Day 3), p. 98.

[25]    State Rec., Vol. 1 of 8, Jury Charges.

As the State points out, each of these arguments rest on the faulty premise that Pollard could not be found guilty of armed robbery if it was shown that the weapon used was not loaded or functional.    As previously discussed, whether in reality the gun was loaded or capable of firing (or even real) at the time is of no moment; proof of that fact is not required to prove armed robbery with a dangerous weapon.    Indeed, the jury instruction accurately reflected the law.    A decision not to pursue a meritless objection to a jury charge does not constitute deficient performance.    *See Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (concluding that "counsel is not required to make futile motions or objections"); *see also Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) ("[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite") (quoting *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994)).    Similarly, counsel's decision not to subpoena witnesses or conduct additional investigation and expend time and resources to establish at trial that the gun was inoperable was objectively reasonable.    In any event, the joint stipulation strongly implied that the gun was inoperable since it had no firing pin and there was no reason to presume that the gun was not in that condition at the time it was found by police.    Defense counsel succeeded in bringing this fact to the jury's attention.    Nor has Pollard shown on this record that counsel failed to pursue a theory of first degree robbery simply because he did not more vigorously present a meritless "unworkable weapon" defense.    Indeed, the record shows that the trial judge specifically instructed the jury on two occasions that first-degree robbery was a lesser included verdict to armed robbery, and informed the jury of the

elements required for that offense.[26]

Moreover, establishing that the gun was inoperable at the time of the offense would not likely have resulted in a different outcome at trial.    Prejudice exists only if there is a reasonable probability that, but for the error, the result of the trial would have been different. *Strickland*, 466 U.S. at 694.    A reasonable probability is one sufficient to undermine confidence in the outcome.    *Id*.    On this point, the state district court on collateral review concluded that no prejudice was shown:

> The court finds that the case law overwhelmingly establishes that a gun need not be loaded or operable to constitute a dangerous weapon within the meaning of LSA-R.S. 14:2(3).    As the Supreme Court of Louisiana has expressly noted:
>
>> We hold that a person who commits a robbery by pointing an unloaded and unworkable pistol at the victim can be adjudged guilty of armed robbery. For us to hold otherwise would be to build into our law an 'unloaded weapon' defense that would defeat most prosecutions for armed robbery except when the offender is captured at the scene and his weapon seized.
>
> *State v. Levi*, 259 La. 591, 598-9, 250 So.2d 751, 754 (La. 1971).
>
> With this case law on dangerous weapons in mind, the court finds that the petitioner has not shown that the results of his trial would have been different if his attorney had argued that the gun was inoperable.    The petitioner has failed to establish either prong of the *Strickland* test and the court will deny relief.[27]

---

[26]    State Rec., Vol. 1 of 8, Jury Charges; *see also* State Rec., Vol. 2 of 8, Trial Transcript (Day 3), pp. 99-106.

[27]    State Rec., Vol. 5 of 8, Order denying PCR.

The Louisiana Fifth Circuit found no error in this ruling.    The Louisiana Supreme Court likewise found that petitioner failed to show he received ineffective assistance of counsel under *Strickland*.    The state court's determination was objectively reasonable.    Thus, Pollard has also failed to establish that he suffered any prejudice based upon counsel's purported omissions.    Accordingly, Pollard's claims that trial counsel was ineffective do not merit *habeas* relief.

Pollard also claims that appellate counsel was ineffective for failing to raise on direct appeal a claim of insufficiency of the evidence based on the weapon's inoperable state.    The *Strickland* standard also applies to claims of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Smith v. Murray*, 477 U.S. 527, 535–536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986)) (applying *Strickland* to claim of attorney error on appeal).    In reviewing claims of ineffective assistance of appellate counsel, the Supreme Court of the United States has expressly observed that appellate counsel "need not advance *every* argument, regardless of merit, urged by the appellant."    *Evitts v. Lucey*, 469 U.S. 387, 394 (1985).    Failing to raise every meritorious claim on appeal does not make counsel deficient.    *Green v. Johnson,* 116 F.3d 1115, 1125-26 (5th Cir. 1997) (citing *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir. 1989)).    Courts give great deference to professional appellate strategy for "winnowing out weaker arguments on appeal and focusing on one central issue if possible, and at most a few key issues.["]    *Jones v. Barnes*, 463 U.S. 745 (1983).    This is true even where the weaker arguments have merit.    *Id.* at 751–52.    The applicable test is

whether the omitted issue was "clearly stronger" than the issue[s] actually presented on appeal. *See*, *e.g.*, *Diaz v. Quarterman*, 228 F. App'x 417, 427 (5th Cir. 2007); *see also Smith v. Robbins*, 528 U.S. at 288.

Here, appellate counsel reasonably determined that it was not in Pollard's best interest to raise a sufficiency-of-the-evidence claim on appeal. As previously explained, Pollard's claim that the evidence was insufficient to convict him of armed robbery because the weapon was not capable of firing has no merit. Because that claim is meritless, it cannot be considered "clearly stronger" than the claims appellate counsel asserted on appeal. Therefore, Pollard's claim that his appellate counsel was ineffective must also fail.

For the foregoing reasons, Pollard has not demonstrated that the state-court decision rejecting his ineffective assistance of trial and appellate counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

## **RECOMMENDATION**

**IT IS RECOMMENDED** that Pollard's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error,

from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc).[28]

New Orleans, Louisiana, this ____10th____ day of _____March_____, 2017.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[28]  *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.